# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JUANITA MARIE LUBONSKI,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No:  5:20-cv-01626-ACA** |
| | } | |
| **COMMISSIONER,** | } | |
| **SOCIAL SECURITY** | } | |
| **ADMINISTRATION,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff Juanita Marie Lubonski appeals the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for a period of disability, disability insurance benefits, and supplemental security income ("SSI").  Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.   PROCEDURAL HISTORY

Ms. Lubonski applied for a period of disability and disability insurance benefits on September 11, 2017, alleging that her disability began on May 7, 2008. (R. at 168).  The Commissioner initially denied Ms. Lubonski's claim (*id*. at 66–68),

and Ms. Lubonski requested a hearing before an Administrative Law Judge ("ALJ") (*id*. at 71–72).

An initial hearing was held on June 6, 2019. (*Id*. at 36). At this hearing, there was some discussion regarding Ms. Lubonski's desire to file an application for SSI. (*Id*. at 36–40). The ALJ ultimately continued the hearing so that Ms. Lubonski could file an SSI application, which she did file on July 17, 2019. (R. at 40, 198). Before the hearing resumed, Ms. Lubonski amended her alleged onset date to August 18, 2015. (*Id*. at 220).

The ALJ resumed the hearing in on November 7, 2019. (*Id*. at 750–800). After holding the hearing, the ALJ issued an unfavorable decision. (*Id*. at 12–33). The Appeals Council denied Ms. Lubonski's request for review (*id*. at 1–6), making the Commissioner's decision final and ripe for the court's judicial review, 42 U.S.C. § 1383(c).

## II.    STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept

as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted).  The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted).  The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted).  Moreover, the court must reverse the Commissioner's decision if the ALJ did not apply the correct legal standards.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process.  The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual function capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are

3

significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Lubonski had not engaged in substantial gainful activity since her alleged disability onset date, August 18, 2015. (R. at 18). The ALJ found that Ms. Lubonski's degenerative disc disease, radiculitis, hypertension, obesity, carpal tunnel syndrome, cervical radiculopathy, and bilateral shoulder bursitis were severe impairments but that her history of chemical burn, chronic obstructive pulmonary disease, substance abuse, and anxiety and depression were non-severe impairments. (*Id*.). The ALJ then concluded that Ms. Lubonski did not suffer from an impairment or combination of impairments that meets or medical equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id*. at 20–21).

After considering the evidence of record, the ALJ determined that Ms. Lubonski had the RFC to perform less than the full range of light work with some additional physical and environmental limitations. (R. at 21–27). Based on this RFC and the testimony of a vocational expert, the ALJ found that Ms. Lubonski had no past relevant work. (*Id*. at 27). But the ALJ concluded that jobs existed in significant numbers in the national economy that Ms. Lubonski could perform, including as a marker, an order caller, and a router. (*Id*. at 27–28). Accordingly, the ALJ

determined that Ms. Lubonski has not been under a disability, as defined in the Social Security Act, between the alleged onset date through the date of the ALJ's decision.  (*Id*. at 28).

## IV.  DISCUSSION

Ms. Lubonski argues that the court should reverse and remand the Commissioner's decision because the ALJ failed to properly evaluate her subjective complaints of pain in accordance with the Eleventh Circuit's pain standard.  (Doc. 14 at 10).  The court disagrees.

Under Eleventh Circuit precedent, a claimant attempting to establish disability through testimony of pain or other subjective symptoms must show evidence of an underlying medical condition and either (1) "objective medical evidence that confirms the severity of the alleged pain arising from that condition" or (2) "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotations omitted).  "If a claimant testifies as to h[er] subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms."  *Id*. at 1210.

Ms. Lubonski testified that she is unable to work because of back and neck pain, muscle spasms, and numbness in her hands and feet.  (*See id*. at 758–85).  She

explained that she suffers from back pain "all day long" and that she sits on a heating pad for four to five hours per day to relieve her back pain.  (R. at 763–69).  Ms. Lubonski also testified that she cannot use her hands for longer than five minutes at a time; cannot walk for longer than five minutes at a time; cannot bend forward without wearing her back brace; cannot lift or carry more than five pounds; and cannot "sit too long without having spasms."  (*Id*. at 763–77).

After reviewing Ms. Lubonski's testimony, the ALJ found that Ms. Lubonski's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms.  (R. at 22).  However, the ALJ concluded that Ms. Lubonski's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  *Id*.  In support of this statement, the ALJ described the medical evidence in the record in detail.  (*See id*. at 22–27).

The ALJ acknowledged that Ms. Lubonski suffers from a spine impairment, as evidenced by her January 2015 magnetic resonance imaging (MRI) scan.  (R. at 23; *see also id*. at 310).  But the ALJ determined that other "medical evidence of record shows the severity of this condition would not preclude [Ms. Lubonski] from performing work activity."  (*Id*. at 23).  In making this determination, the ALJ noted that Dr. Ted Edwards routinely saw Ms. Lubonski throughout 2016 and 2017.  (*Id*. at 23; *see also id*. at 356–69).  Dr. Edwards prescribed Norco, Nabumetone, and

Metaxalone, and also routinely administered steroid injections which stabilized Ms. Lubonski's pain.  (*Id.*).  Examinations in May and November of 2016 revealed that Ms. Lubonski had near-normal muscle strength, and an x-ray performed on April 3, 2016 showed no significant abnormality of Ms. Lubonski's spine.  (*Id.* at 357, 365, 744).

The ALJ also considered Dr. Sherry Lewis's examination of Ms. Lubonski on November 16, 2017, which revealed that Ms. Lubonski had normal gait and did not use any type of assistive device.  (R. at 23; *see also id.* at 656–60).  In addition, Ms. Lubonski was neurologically intact and had full range of motion in all joints, normal reflexes, normal muscle strength, and normal ability to squat and recover.  (*Id.*).

Moreover, the ALJ explained that there was no evidence Ms. Lubonski sought treatment from a physician after November 2017.  (*Id.* at 23).  The ALJ noted that Ms. Lubonski visited the emergency room in November 2018 for back pain, but during that visit, Ms. Lubonski "indicated her pain had only begun one week earlier and she admitted to taking no narcotic or over-the-counter medication."  (*Id.* at 23–24, *see also id.* at 726–31).  The emergency room records also reflect that Ms. Lubonski "ambulated with a normal gait . . . had intact sensation, normal reflexes, and normal motor strengths."  (*Id.* at 726–31).  Ms. Lubonski "was discharged home in stable condition and given no restrictions or limitations regarding her work activity or daily activities."  (*Id.*).  Based on this evidence, the ALJ concluded that

Ms. Lubonski's spine impairment "is not of such severity as to preclude the performace [sic] of all work activities but that her degenerative disc disease and history of disc hernations [sic] would preclude work at the heavier levels of exertion." (*Id.* at 24).

Regarding Ms. Lubonski's testimony that she suffers from neck pain and numbness in her extremities, the ALJ acknowledged that Ms. Lubonski's medical records indicate she suffers from carpal tunnel syndrome. (R. at 25, 401, 402, 433, 442). The ALJ also acknowledged that a vascular study performed on September 28, 2017 revealed possible thoracic outlet syndrome. (*Id.* at 25; *see also id.* at 426–29). But the ALJ pointed out that there is no evidence Ms. Lubonski ever had surgery for her possible thoracic outlet syndrome or otherwise sought further treatment for this ailment after the vascular study. (*Id.* at 25). And, the ALJ noted that Dr. Lewis' examination of Ms. Lubonski on November 16, 2017 demonstrated that she "had normal grip strengths and dexterity, as evidence[d] by her intact ability to pick up varying shapes and depths." (*Id.* at 25; *see also id.* at 659–60).

Ms. Lubonski argues that the ALJ improperly evaluated her subjective complaints of pain. She advances numerous individual arguments attacking the ALJ's reasons for rejecting her subjective testimony. (*See* doc. 14 at 10–24). None of these arguments are persuasive.

First, in several of her arguments, Ms. Lubonski simply points to evidence in the record that corroborates her testimony.  This is no more than an invitation to the court to reweigh the evidence in this case or substitute its judgment for the of the ALJ, which the court cannot do even if the evidence preponderates against the ALJ's findings.  *Winschel*, 631 F.3d at 1178; *Crawford*, 363 F.3d at 1158–59 ("The question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

For example, Ms. Lubonski contends that the ALJ disregarded the results of her January 9, 2015 MRI.  (Doc. 14 at 13).  She points out that the ALJ did not acknowledge that the MRI revealed "impingement of the left SI nerve root," that the ALJ in fact states elsewhere in her decision that "[t]here is no evidence of nerve root compression," and that the ALJ incorrectly relied on an April 2016 x-ray that revealed "no significant abnormality" of Ms. Lubonski's vertebrae.

As an initial matter, the court notes that, in opining that there "is no evidence of nerve root compression," the ALJ was not referencing Ms. Lubonski's subjective complaints. Rather, the ALJ made this observation in determining that Ms. Lubonski does not satisfy Listing of Impairment 1.04 for disorders of the spine.  (R. at 20). Ms. Lubonski acknowledges that, since the ALJ's decision, Listing of Impairment 1.04 has been repealed and replaced with Listing of Impairment 1.15.  (Doc. 14 at

10 n.5).  And Ms. Lubonski concedes that she does not satisfy the requirements for Listing of Impairment 1.15.  (*Id.*).  Therefore, this is not an issue before the court.

As for the ALJ's failure to explicitly refer to the impingement of Ms. Lubonski's left SI nerve root, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision."  *Dyer*, 395 F.3d at 1211.  Here, the ALJ discussed the results of Ms. Lubonski's MRI and acknowledged that the MRI demonstrated degenerative disc disease and disc herniations.  (R. at 23).  And the ALJ did not state or imply that these spinal impairments no longer existed at the time of Ms. Lubonski's x-ray in April 2016 that revealed no significant abnormality of her vertebrae.[1]  (R. at 23, 744).

Ms. Lubonski's arguments regarding the efficacy of her spinal injections and the ALJ's reliance on Dr. Lewis's examination fail for a similar reason.  Ms. Lubonski argues that the fact she received temporary relief from one steroid injection does not provide substantial evidence to support the ALJ's decision.  (Doc. 14 at 17).  She also argues that Dr. Lewis's findings from her examination are contrary to and inconsistent with medical evidence from treating physicians.  (*Id.* at 18–19).

Again, the court emphasizes that it cannot reweigh the evidence in this case. *Winschel*, 631 F.3d at 1178.  Despite the ALJ's failure to discuss some of the medical

---

[1] The court observes that the January 9, 2015 MRI also found "no significant abnormality" of Ms. Lubonski's vertebrae and is therefore not inconsistent with the later x-ray.  (R. at 310).

evidence that appears consistent with Ms. Lubonski's testimony, the ALJ's recitation of the evidence of record was sufficiently thorough and accurate and demonstrates that she considered Ms. Lubonski's condition as a whole.  (*See* R. at 22–24). Moreover, Ms. Lubonski's contention that she received only "short-lived results from a single steroid injection" is inconsistent with the evidence in the record, which indicates that Ms. Lubonski received routine steroid injections that improved her pain on numerous occasions.  (*See e.g.*, *id*. at 363, 448, 458).

Ms. Lubonski next argues that the fact she continued to work part-time until her amended onset date in August 2015 is not adequate reason to reject her pain testimony.  (Doc. 14 at 14).  She also argues that "[i]t is unclear how the ALJ is intending the Plaintiff's receipt of benefits in 2015, 2016, and 2017 to support the rejection of her pain testimony."  (Doc. 14 at 15).

The court agrees that the ALJ's reason for referencing Ms. Lubonski's continued receipt of benefits in 2015, 2016, and 2017 is wholly unclear.  (R. at 23). But the court need not determine whether the ALJ relied on these past benefits in reaching her decision or whether such reliance would have been in error. Disregarding the ALJ's statement about Ms. Lubonski's prior benefits, there is still substantial evidence, outlined above and below, to support the ALJ's decision. Therefore, even if the ALJ erred in relying on Ms. Lubonski's previous SSI benefits in reaching her decision, such error was harmless.

The court also finds that the ALJ properly considered Ms. Lubonski's prior work history in reaching her decision.   Under the relevant regulations, the Commissioner will "consider all of the evidence presented, including information about [the claimant's] prior work record[] . . . ."   20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).   And the regulations specifically permit the Commissioner to consider a claimant's daily activities and "[o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms" when making this determination.   *Id*. at §§ 404.1529(c)(3)(i), 404.1529(c)(3)(vii), 416.929(c)(3)(i), 416.929(c)(3)(vii).

In her decision, the ALJ stated that, despite the spine impairment demonstrated by the January 2015 MRI, "the medical evidence of record shows the severity of this condition would not preclude [Ms. Lubonski] from performing work activity and [Ms. Lubonski] continued to work until her amended onset date in August of 2015."  (R. at 23).  Ms. Lubonski argues that the ALJ should not have considered her previous work because it was not past relevant work and was performed only part-time and with accommodations.  (Doc. 14 at 14).  But Ms. Lubonski provides no authority for this proposition, and the court finds that the ALJ properly considered Ms. Lubonski's prior part-time work in accordance with the Regulations.  *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Next, Ms. Lubonski argues that the fact she has only obtained emergency treatment since November 2, 2017 is not an adequate reason to reject her pain testimony.  (Doc. 14 at 21).  In support of her argument, she cites to *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988).  In *Dawkins*, the plaintiff alleged she was disabled and unable to work because of a variety of medical problems that would be controllable with medication and a proper diet.  *Id*. at 1212.  At her hearing, the plaintiff testified that she did not consistently follow her doctors' prescribed treatments because she did not have the money to do so.  *Id*. at 1213.  The ALJ denied the plaintiff benefits, relying primarily on evidence that she was noncompliant with prescribed medical treatment.  *Id*. at 1212.  The district court affirmed.  *Id*.

On appeal, the Eleventh Circuit considered 20 C.F.R. § 416.930(b) which provides that a claimant's refusal to follow prescribed medical treatment without good reason precludes a finding of disability.  *Dawkins*, 848 F.2d at 1213.  The regulations list examples of good reasons for not following prescribed treatment.  20 C.F.R § 416.930(c).  The plaintiff in *Dawkins* did not argue that any of the listed exceptions applied in her case but that her poverty should excuse her noncompliance.  *Dawkins*, 848 F.2d at 1213.  The court agreed and held that, "while a remediable or controllable medical condition is generally not disabling, when a claimant cannot

afford the prescribed treatment . . . the condition that is disabling in fact continues to be disabling in law." *Id.*

The facts in Ms. Lubonski's case differ from those in *Dawkins*. The issue in this case is whether the ALJ properly considered Ms. Lubonski's subjective complaints in accordance with the Eleventh Circuit's pain standard. (Doc. 14 at 10). Ms. Lubonski does not argue that her conditions are controllable with prescribed treatment that she cannot afford. In fact, 20 C.F.R. § 416.930(b) is not mentioned in the ALJ's decision or in the parties' briefs. (*See* R. at 18–28; Docs. 14, 17, 18).

The ALJ observed in her decision that Ms. Lubonski has "continued to do well, with no evidence she required treatment for back pain complaints after her examination with Dr. Lewis on November 16, 2017." (R. at 23). The ALJ acknowledged that Ms. Lubonski did visit the emergency room complaining of back pain on November 14, 2018. (*Id.*). However, notes from that visit indicate that Ms. Lubonski's pain had begun only one week earlier, that she "had intact sensation, normal reflexes, and normal motor strength," and that she "was discharged home in stable condition and given no restrictions or limitations regarding her work activity or daily activities." (R. at 24). Therefore, the ALJ did not rely only on the fact that Ms. Lubonski had not sought medical treatment for her back pain since November 2017. The ALJ explained how the records from Ms. Lubonski's November 2018

emergency room visit are consistent with her overall determination that the severity of Ms. Lubonski's back pain is not so severe as to preclude all work.

Ms. Lubonski next attacks the ALJ's reliance on the fact that she attempted to get pregnant during 2016 and 2017.  (Doc. 14 at 22).  She argues that there is no evidence she was ever actually pregnant and therefore the "use of a condition that did not happen does not provide substantial evidence to support the ALJ."  (*Id.*). This argument operates from a fake premise.  The ALJ did not state that Ms. Lubonski ever succeeded in becoming pregnant.  Rather, the ALJ observed that Ms. Lubonski's *attempts* to become pregnant suggest her pain may have been overstated because "efforts to conceive and maintain a pregnancy and the additional stress and weight gain to her body is inconsistent with someone who has the functional limitations [Ms. Lubonski] has reported."  (R. at 26).

Lastly, Ms. Lubonski argues that Dr. Lewis and Dr. Amason's medical opinions do not provide substantial evidence to support the ALJ's decision to reject her pain testimony.  (R. at 22–24).

The ALJ found persuasive Dr. Amason's opinion that Ms. Lubonski could perform a range of light work, with occasionally performing postural maneuvers and no climbing of ladders, ropes, or scaffolds.  (*Id.* at 26; *see also id.* at 46–63). Ms. Lubonski argues that Dr. Amason's opinion does not provide substantial evidence in support of the ALJ's decision to reject her pain testimony because

Dr. Amason's review of her records was "less than complete" and "made no attempt to address the test that the ALJ is required [to] address regarding the Plaintiff's pain under 42 U.S.C. § 423(d)(5)(A)." (Doc. 14 at 23).   This argument is unpersuasive. Simply put, Dr. Amason is not the ALJ in this case and is therefore under no obligation to address the pain standard in 42 U.S.C. § 423(d)(5)(A).

Moreover, Ms. Lubonski has not challenged the ALJ's review of  Dr. Amason's opinion pursuant to 20 C.F.R. § 404.1520c or 20 C.F.R. § 416.920c which require the ALJ to consider the persuasiveness of a medical opinion using five factors: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing the medical source has familiarity with other evidence or an understanding of the Social Security Administration's policies and evidentiary requirements.  *Id.* at §§ 404.1520c(c), 416.920c(c).  Here, the ALJ properly evaluated Dr. Amason's opinion under the relevant factors.  The ALJ noted that Dr. Amason's opinion "is generally consistent with the record, [Ms. Lubonski's] response to treatment efforts, [Ms. Lubonski's work activities, the consultative examination and the longitudinal evidence when considered as a whole." (R. at 26). The ALJ also noted that Dr. Amason is a specialist familiar with agency policy and procedure and that his review of the record was thorough.  (*Id.*).  Therefore, even if

Ms. Lubonski intended to challenge the ALJ's consideration of Dr. Amason's opinion, the court finds that substantial evidence supports the ALJ's decision to find Dr. Amason's opinion persuasive.

As for Dr. Lewis, Ms. Lubonski argues that the ALJ erred by giving credit to Dr. Lewis's opinion that Ms. Lubonski is able to perform work activities in spite of her impairments because such opinion "is inherently neither valuable nor persuasive to the issue of whether [the claimant is] disabled." (Doc. 14 at 23 (quoting 20 C.F.R. § 404.1520b(c))). Although the ALJ acknowledged that Dr. Lewis opined Ms. Lubonski could perform work activities, it is clear that Dr. Lewis' opinion did not direct her decision. Here, the ALJ thoroughly reviewed Dr. Lewis' examination of Ms. Lubonski, which revealed that Ms. Lubonski "had normal grip strengths and dexterity" and could perform activities such as "walking[,] sitting, standing, bending, speaking, hearing and picking up and handling objects." (R. at 25–26).

## V.    CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Lubonksi's application for a period of disability, disability insurance benefits, and supplemental security income. Therefore, the court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this May 25, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE